UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Yusuf Aden Ahmed,

        Plaintiff,

—v—

Thomas Decker et al.,

        Defendants.

17-cv-0478 (AJN)

MEMORANDUM OPINION & ORDER

---

ALISON J. NATHAN, District Judge:

    Yusuf Aden Ahmed has been detained by federal immigration officials since July 2, 2016. He has filed a petition for writ of habeas corpus arguing that he is constitutionally entitled to an individualized bond determination. The Magistrate Judge filed a Report and Recommendation agreeing with Ahmed and recommending that this Court grant his petition and order the Government to hold an individualized bond hearing. The Government timely filed several objections to the Report and Recommendation. The Court concludes that there is no merit to these objections and, as a result, the Report and Recommendation is adopted in full and the Government is ordered to provide an individualized bond determination for Ahmed.

    The Court recognizes that the Supreme Court of the United States recently reheard oral argument in *Jennings v. Rodriguez*, No. 15-1204 (U.S. argued Oct. 8, 2017), a case that will likely resolve whether detained aliens like Ahmed have a constitutional right to a bond hearing. *See* Brief for Petitioners at I, Jennings v. Rodriguez, No. 15-1204 (Aug. 26, 2016) (listing as a question presented "[w]hether aliens seeking admission to the United States who are subject to mandatory detention under Section 1225(b) must be afforded bond hearings, with the possibility of release into the United States, if detention lasts six months"). Normally, the Court would wait

1

to rule on a case until the Supreme Court and Second Circuit had decided the relevant legal issue under consideration. However, in light of the remedy sought and what is required under current Second Circuit precedent, it would be inappropriate to wait in this case.[1]

## I. Background

### A. Statutory Background

A complex system of laws governs immigration into the United States. Relevant to this petition is 8 U.S.C. § 1225, which governs aliens seeking admission into the United States. An alien is considered "an applicant for admission" under section 1225 if he "has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1).

When an applicant for admission arrives in the United States, a federal officer must determine whether he is, in fact, admissible. There are numerous grounds upon which such an applicant may be found inadmissible. If the alien seeks to gain admission to the United States "by fraud or willfully misrepresenting a material fact," he is inadmissible. *Id.* § 1182(a)(6)(C). An applicant for admission is also inadmissible if he "is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document" or if he does not possess "a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required." *Id.*

---

[1] This approach has also been taken by other judges in this circuit. In a recent case, Judge Caproni recognized that the Supreme Court is currently considering *Jennings* and the Second Circuit has stayed appeals of habeas petitions concerning indefinite detention of aliens pending the Supreme Court's decision. *Osias v. Decker*, No. 17-cv-2786 (VEC), 2017 WL 3242332, at *1 n.3 (S.D.N.Y. July 28, 2017), *vacated* No. 17-cv-2786 (VEC), 2017 WL 3432685 (S.D.N.Y. Aug. 9, 2017). She reasoned that "[a]lthough this Court might normally be inclined to stay the case pending the Supreme Court and Second Circuit's consideration of the very legal issue presented by the Petition, the prolonged deprivation of Petitioner's liberty, without any individualized assessment of the risk that he will flee, warrants immediate review." *Id.*

§ 1182(a)(7)(A)(i). If an alien is found inadmissible under either of these provisions – subsections 1182(a)(6)(C) or 1182(a)(7) – an immigration officer "shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution." *Id.* § 1225(b)(1)(A)(i). If an immigration officer finds that the alien's stated fear of persecution is not "credible," "the officer shall order the alien removed from the United States without further hearing or review." *Id.* § 1225(b)(1)(B)(iii). If, however, the officer determines that the alien has demonstrated a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum." *Id.* § 1225(b)(1)(B)(ii).

If an applicant for admission is not found inadmissible by reason of providing fraudulent documents or for lacking requisite admission documents but an immigration officer nevertheless "determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for" a removal proceeding. *Id.* § 1225(b)(2)(A).

In effect, any alien deemed to be an applicant for admission who is not found to be clearly admissible but is also not found to be clearly removable is thus subject to mandatory detention under section 1225(b). *See id.* § 1225(b)(1)(B)(ii) ("[T]he alien shall be detained for further consideration of the application for asylum."); *id.* § 1225(b)(2)(A) ("[T]he alien shall be detained for a proceeding under section 1229a of this title.").

### B. Ahmed's Detention and Petition for Habeas Corpus

Yusuf Aden Ahmed is a citizen and native of Somalia. Report and Recommendation, Dkt. No. 21, at 1-2. Ahmed arrived at the San Ysidro Port of Entry on the United States-Mexico border on July 2, 2016. Report and Recommendation at 2. He did not have permission to enter the United States but asked for asylum. Report and Recommendation at 2. An immigration

3

officer determined that Ahmed had a "credible fear of persecution" if he returned to Somalia. Report and Recommendation at 2. Ahmed was taken into custody by the U.S. Department of Homeland Security Immigration and Customs Enforcement ("ICE"), and he has remained in ICE custody since. Report and Recommendation at 2; Petition for Writ of Habeas Corpus ("Petition"), Dkt. No. 1, ¶ 11. Ahmed submitted an asylum application on October 18, 2016. Report and Recommendation at 2. Ahmed requested parole from ICE custody on October 28, 2016 pursuant to 8 C.F.R. § 212.5(b)(5), which allows ICE to parole aliens "whose continued detention is not in the public interest," but his request was denied on November 21, 2016. Report and Recommendation at 2; Request for Parole, Dkt. No. 1-4. ICE reconsidered Ahmed's request for parole but denied it a second time on March 13, 2017. Report and Recommendation at 3. On January 23, 2017, Ahmed filed a Petition for Writ of Habeas Corpus challenging his prolonged detention without a bond hearing on both statutory and constitutional grounds. *See generally* Petition. The Government opposed Ahmed's petition, arguing that for several reasons, he was not entitled to a bond hearing as a statutory or constitutional matter. *See generally* Gov. Memo. in Opp. to Petition ("Opp."), Dkt. No. 7. On February 27, 2017, the Court referred this matter to Magistrate Judge Gabriel W. Gorenstein to prepare a Report and Recommendation. Dkt. No. 9.

### C. Report and Recommendation

On August 15, 2017, Magistrate Judge Gorenstein issued his Report and Recommendation. Judge Gorenstein first addressed "whether Ahmed was initially subject to detention under 8 U.S.C. § 1225(b)(2) or 8 U.S.C. § 1225(b)(1)." Report and Recommendation at 3. Reasoning that section 1225(b)(1) expressly applies to asylum seekers while section 1225(b)(2)(A) does not, the Magistrate Judge concluded that Ahmed was initially detained

pursuant to section 1225(b)(1)(B)(ii). Report and Recommendation at 4. Magistrate Judge Gorenstein next considered whether Ahmed was still detained pursuant to section 1225(b)(1)(B)(ii) at the time he filed his petition for writ of habeas corpus or whether, as Ahmed argued, section 1225(b)(1)(B)(ii) mandated detention only until the Government commenced removal proceedings in his case. Report and Recommendation at 4-5. The Magistrate Judge concluded that the only logical reading of section 1225(b)(1)(B)(ii) calls for detention "to continue until there has actually been a completed consideration of [asylum] proceedings." Report and Recommendation at 5. As a result, Magistrate Judge Gorenstein concluded that Ahmed was still required to be detained pursuant to section 1225(b)(1)(B)(ii).

The Report and Recommendation next considered whether any constitutional limit on indefinite detention under section 1225(b) exists. Report and Recommendation at 5-12. Magistrate Judge Gorenstein determined that, in light of the Second Circuit's decision in *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), section 1225(b)(1)(B)(ii) must be read to include a "six-month limitation on hearing-less detention when applied to non-LPR aliens seeking asylum who show a credible fear of persecution." Report and Recommendation at 12.

In *Lora*, the Second Circuit considered whether 8 U.S.C. § 1226(c), which requires federal officials "to detain aliens who have committed certain crimes 'when [they are] released,'"[2] 804 F.3d at 604 (alteration in original) (quoting 8 U.S.C. § 1226(c)), may authorize

---

[2] That section states in full:
> The Attorney General shall take into custody any alien who—
> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence [1] to a term of imprisonment of at least 1 year, or
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

indefinite detention consistent with the Constitution. The Second Circuit acknowledged that section 1226(c) "contains no explicit provision for bail." *Id.* Nevertheless, the Court of Appeals held that, to avoid due process concerns raised by indefinite detention, "an immigrant detained pursuant to section 1226(c) must be afforded a bail hearing before an immigration judge within six months of his or her detention." *Id.* at 616. In reaching this conclusion, the Second Circuit recounted a long line of precedents in which the Supreme Court decided that "the Fifth Amendment entitles aliens to due process in deportation proceedings" and that "for detention under the statute to be reasonable, it must be for a brief period of time." *Id.* at 613-14 (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993); *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); and *Demore v. Kim*, 538 U.S. 510, 528 (2003)). Quoting Justice Kennedy's concurrence in *Demore*, the Second Circuit further explained that "[w]ere there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Id.* at 614 (alteration in original) (quoting *Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring)). Finally, the Court of Appeals concluded that a "bright-line approach" would best ensure expedient resolution and that "similarly situated detainees receive similar treatment," and therefore held that a detainee could only be held for six months before receiving a bail hearing. *Id.* at 614-15, 616.

Magistrate Judge Gorenstein determined that the same due process concerns were implicated by indefinite detention under section 1225(b) as under section 1226(c) and that, as a result, *Lora*'s holding extends to immigrants detained pursuant to section 1225(b) and requires

---

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1).

that they be given a bail hearing after six months of detention. Report and Recommendation at 10-12. His Report and Recommendation identifies numerous cases similarly concluding that mandatory detention under section 1225(b) is governed by *Lora* because the same due process concern attaches to mandatory detention under 1225(b) as was at issue in *Lora*. Report and Recommendation at 7-8 (citing *Osias v. Decker*, 2017 WL 3242332; *Morris v. Decker*, No. 17-cv-2224 (VEC), 2017 WL 1968314 (S.D.N.Y. May 11, 2017), *appeal docketed*, No. 17-2121 (2d Cir. July 7, 2017); *Heredia v. Shanahan*, 245 F. Supp. 3d 521 (S.D.N.Y. 2017), *appeal docketed*, No. 17-1720 (2d Cir. May 26, 2017), *Ricketts v. Simonse*, No. 16-cv-6662 (LGS), 2016 WL 7335675 (S.D.N.Y. Dec. 16, 2016); *Saleem v. Shanahan*, No. 16-cv-0808 (RA), 2016 WL 4435246 (S.D.N.Y. Aug. 22, 2016), *appeal docketed*, No. 16-3587 (2d Cir. Oct. 21, 2016); *Arias v. Aviles*, 15-cv-9249 (RA), 2016 WL 3906738 (S.D.N.Y. July 14, 2016), *appeal docketed*, No. 16-3186 (2d Cir. Sept. 12, 2016)). Magistrate Judge Gorenstein noted that there exist "two cases in this circuit that have refused to apply *Lora*'s six-month limitation to section 1225(b)": Judge Keenan's decision in *Perez v. Aviles*, 188 F. Supp. 3d 328 (S.D.N.Y. 2016), and Judge Scheindlin's decision in *Cardona v. Nalls-Castillo*, 177 F. Supp. 3d 815 (S.D.N.Y. 2016). Report and Recommendation at 8 n.5. However, he determined that these two cases were not persuasive because the decision in *Perez* was based in part on the absence of any case within this circuit applying a six-month temporal limitation to section 1225(b) and "there are now numerous such cases," and "*Cardona* contains no analysis as to why *Lora* does not apply to section 1225(b) detention." Report and Recommendation at 8 n.5.

The Magistrate Judge further concluded that it was irrelevant to the case that *Lora* concerned a lawful permanent resident ("LPR") while Ahmed is a non-LPR.[3] He explained that multiple decisions from both this Circuit and elsewhere have applied time limitations to the detention of non-LPR aliens under section 1225(b). Report and Recommendation at 8 (citing *Saleem*, 2016 WL 4435246; *Osias*, 2017 WL 3242332; Order, *Sammy v. Decker*, No. 17-cv-2615 (PAE), Dkt. No. 14; *Singh v. Lowe*, Civ. Action No. 3:17-0119, 2017 WL 1134413 (M.D. Pa. Mar. 27, 2017), *appeal docketed*, No. 17-2178 (3d Cir. May 26, 2017); *Ahad v. Lowe*, 235 F. Supp. 3d 676 (M.D. Pa. 2017), *appeal docketed*, No. 17-1492 (3d Cir. Mar. 3, 2017); *Crespo v. Baker*, No. 11-cv-3019-IEG (POR), 2012 WL 1132961 (S.D. Cal. Apr. 3, 2012)). The Magistrate Judge adopted the reasoning of those decisions, which hold that because 1225(b) has generally been read to contain a temporal limitation on detention for LPRs, 1225(b) must *also* contain a temporal limitation on detention for non-LPRs. *See* Report and Recommendation at 8-10. This syllogism follows from the Supreme Court's holding in *Clark v. Martinez*, 543 U.S. 371 (2005), that "the *same* detention provision" of the INA cannot be given different meanings depending on the type of alien who has been detained. 543 U.S. at 380; *see also id.* ("It is not at all unusual to give a statute's ambiguous language a limiting construction called for by one of the statute's applications, even though other of the statute's applications, standing alone, would not support the same limitation. The lowest common denominator, as it were, must govern."). Relying on *Clark* and cases applying that decision to section 1225(b), the Report and Recommendation concludes that "section 1225(b) . . . must be read to have the same limitation since its indefinite detention provision could be applied to LPRs." Report and Recommendation

---

[3] In its opposition, the Government argued that because LPRs receive greater constitutional protection than aliens who have never been admitted into the United States, cases finding an implicit six-month limitation to detention for LPRs should not apply to Ahmed. *See* Opp. at 2-3, 14-15.

8

at 11; *see also id.* at 11-12 ("Because the detention aspect of section 1225(b)(1) could apply to both LPRs and undocumented arriving aliens seeking admission, it must be read to be identical for both classes of aliens.").

### D. Government's Objections

On August 29, 2017, the Government timely filed objections to the Report and Recommendation pursuant to 18 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). *See* Gov. Objections to Report and Recommendation ("Objections"), Dkt. No. 22. The Government's objections first state that it agrees with the Magistrate Judge's conclusion that Ahmed's initial detention was pursuant to section 1225(b)(1)(B)(ii) rather than section 1225(b)(2)(A). Objections at 3. The Government writes that it had "mistakenly stated" in its original opposition to Ahmed's petition that Ahmed was detained pursuant to section 1225(b)(2)(A), and thereby "created an apparent dispute between the parties when in fact none existed." Objections at 3. The Government further agrees with the Report and Recommendation's conclusion that section 1225(b)(1)(B)(ii) continues to govern Ahmed's detention "during his removal proceedings." Objections at 3-4.

The Government then raises two objections to the Report and Recommendation. First, the Government argues that the Magistrate Judge incorrectly stated that section 1225(b)(1)(B)(ii) applies to LPRs when, in fact, that provision does not ever govern detention of LPRs. Objections at 4-6. Second, the Government objects to the Magistrate Judge's conclusion that the holding of *Lora* is applicable to mandatory detention under section 1225(b). The Government argues that there are procedural differences between section 1225(b) and the provision at issue in *Lora* (section 1226(c)) that make *Lora*'s holding inapplicable to 1225(b). Objections at 6-8. The Government also argues that because *Lora* applied to aliens already inside the United States who

receive greater due process protections than those seeking admission at the border, *Lora*'s holding does not extend to detention under section 1225(b). Objections at 9-11. As a result, the Government urges the Court to reject the Report and Recommendation's due process analysis and conclude that Ahmed's detention is lawful. Objections at 11.

## II. Legal Standard

A court may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain dispositive matters, including petitions for writ of habeas corpus. *See* 28 U.S.C. § 636(b)(1)(B). A party to the action may file objections to the proposed findings and recommendations within fourteen days after being served with a copy of the report, and the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1)(C). The judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

## III. Discussion

The Government raises two objections to the Magistrate Judge's Report and Recommendation. For the reasons explained below, the Court rejects both objections and adopts the Report and Recommendation.

### A. Section 1225(b)(1)(B)(ii) Applies to LPRs

The Government's first objection to the Report and Recommendation is that it is "based on an incorrect premise," namely the Report's conclusion that section 1225(b)(1) "could apply to both LPRs and undocumented arriving aliens seeking admission." Objections at 4 (quoting Report and Recommendation at 11-12). The Government argues that section 1225(b)(1)(B)(ii) –

the section pursuant to which Ahmed is detained – does not apply to LPRs because it is reserved for aliens who lack entry documents or attempt to enter the country by fraud but who then pass a credible-fear screening process at the border. *See* Objections at 4.

The Court will not consider this argument because it was not raised before the Magistrate Judge. "In this district and circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *Illis v. Artus*, No. 06-cv-3077 (SLT) (KAM), 2009 WL 2730870, at *1 (E.D.N.Y. Aug. 28, 2009); *accord Azkour v. Haouzi*, No. 11-cv-5780 (RJS), 2017 WL 3016942, at *4 (S.D.N.Y. July 17, 2017); *see also Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40 n.3 (2d Cir. 1990) ("Pan Am had no right to present further testimony when it offered no justification for not offering the testimony at the hearing before the magistrate."). Considering such new arguments "would unduly undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a Report is issued to advance additional arguments." *Abu-Nassar v. Elders Futures, Inc.*, No. 88-cv-7906 (PKL), 1994 WL 445638, at *4 n.2 (S.D.N.Y. Aug. 17, 1994).

The Government did not argue in its original brief that Ahmed must be treated differently because he is detained pursuant to section 1225(b)(1)(B)(ii), which is inapplicable to LPRs, rather than section 1225(b)(2), which is sometimes applicable to LPRs. To the contrary, in its memorandum in opposition, the Government repeatedly stated that Ahmed was "subject to detention under 8 U.S.C. § 1225(b)(2)(A)" rather than section 1225(b)(1)(B)(ii). Opp. at 1; *see also id.* at 5, 9, 11. The Government has disavowed that it ever actually believed Ahmed was detained pursuant to section 1225(b)(2)(A), stating in its objections that "an error in its opposition brief created an apparent dispute between the parties when in fact none existed. . . .

11

The government apologizes for this oversight and agrees with the Report's conclusion on this preliminary finding." Objections at 3. The Government's failure to catch and correct such a major factual error in its brief until after a Report and Recommendation has been issued is not a legitimate justification for the Court to accept new arguments framed as objections to that Report and Recommendation.

Moreover, the Government's memorandum in opposition routinely treated section 1225(b) as a single statutory provision and acknowledged that *some* LPRs may be detained under that provision. *See, e.g.*, Opp. at 14 ("The mere fact that an LPR returning from abroad might be detained under § 1225(b) does not raise constitutional doubts . . . ."); *id.* ("As noted, most aliens coming to this country are not LPRs, and most LPRs cannot be detained under § 1225(b)."); *see also id.* at 12, 14, 19. The Government cannot argue to the Magistrate Judge that section 1225(b) sometimes applies to LPRs and then object that the Magistrate Judge's Report and Recommendation treats 1225(b) as a provision that applies in some cases to LPRs. The Government waived this argument.

Even if the Court were to consider the Government's new argument, it would not change the outcome. The Court agrees that LPRs are not subject to detention under section 1225(b)(1)(B)(ii) because an alien who has already been granted status as a lawful permanent resident would not be detained at the border while seeking asylum. Nor does it seem at all likely that an LPR would seek admission "by fraud or willfully misrepresenting a material fact" in violation of 8 U.S.C. § 1182(a)(6)(C), or lack a valid entry document in violation of 8 U.S.C. § 1182(a)(7). As a result, to the extent that the Report and Recommendation concluded that "section 1225(b)(1) could apply to both LPRs and undocumented arriving aliens," Report and Recommendation at 11-12, it was incorrect.

However, this does not change the fact that section 1225(b)(1)(B)(ii) must implicitly contain a provision requiring a bond hearing after six months. First, the rationale of *Lora* did not turn exclusively on the rights of LPRs. In that case, the Second Circuit recognized a more general concern regarding a "statutory scheme that ostensibly authorized indefinite detention of non-citizens." 804 F.3d at 613. As courts in this district have recognized, "the logic of the holding in *Lora* logically extends to an alien held under Section 1225(b), and all the more so under Section 1225(b)(1)(B)(ii), where potentially lengthy asylum proceedings are under way." Transcript for May 25, 2017 ("*Sammy* Bench Opinion"), *Sammy v. Decker*, No. 17-cv-2615 (PAE), Dkt. No. 16, at 49. As a result, the need for "procedural safeguard[s] in place for immigrants detained for months without a hearing" is equally high. *Id.* (quoting *Lora*, 804 F.3d at 614).

Second, the cases interpreting *Lora* have relied in part on a concern that the same category of aliens should receive similar treatment regardless of which provision of the INA governs their particular case. *See, e.g.*, *Morris*, 2017 WL 1968314, at *4 ("This Court sees no principled basis to distinguish the due process rights afforded the LPR in *Lora* from those to which Petitioner is entitled. Both are LPRs, both were convicted of a drug crime, and both were detained pending conclusion of removal proceedings."); *Heredia*, 245 F. Supp. 3d at 526 ("[T]he Court can find no basis to distinguish a LPR detained before a removal hearing pursuant to § 1226(c) who is entitled to a bail hearing within six months and a LPR detained pursuant to § 1225(b)." (citation omitted)). For example, in *Arias*, Judge Abrams reasoned that *Lora*'s holding must be extended to section 1225(b) because "[i]f this Court were to rule that Gutierrez Arias could be permissibly detained for an unlimited period of time under § 1225(b), such a decision could result in affording more protections to non-resident aliens detained under

13

§ 1226(c), and for whom removal is authorized by law, than to LPRs detained pursuant to § 1225(b) and merely accused of wrongdoing." 2016 WL 3906738, at *9. The Court described this result as "untenable." Id.; see also Rodriguez v. Robbins, 715 F.3d 1127, 1143 (9th Cir. 2013) ("[I]f anything it would appear that the LPRs who fall within § 1225(b)'s purview should enjoy *greater* constitutional protections than criminal aliens who have already failed to win relief in their removal proceedings . . . ."). That concern supports a finding of an implicit six-month temporal limit for aliens detained pursuant to section 1225(b)(1)(B)(ii): there is no logical reason that a non-LPR individual who arrives at the border and demonstrates a credible fear of persecution under section 1225(b)(1)(B)(ii) – that is, makes out a showing that he is likely entitled to asylum – should be detained indefinitely while a similarly situated non-LPR individual who arrives at the border and simply cannot demonstrate that he is admissible under section 1225(b)(2)(A) – including because of previous wrongdoing or removal – should be protected from indefinite detention.

The Court concludes that, even if it reached the Government's argument, it would not alter the validity of the Report and Recommendation's conclusion. As a result, this objection is denied.

**B.     There Is No Difference Between Section 1225(b) and Section 1226(c) That Is Material to *Lora*'s Holding**

The Government's second objection to the Magistrate Judge's Report and Recommendation asserts that *Lora* is inapplicable to aliens detained under section 1225(b) because of differences between the detention-pursuant-to-removal provision at issue in *Lora* – section 1226(c) – and the detention-pursuant-to-removal provision of section 1225(b). However, the Court does not find any of these differences dispositive.

14

The Government first argues that the provisions are dissimilar because under 8 U.S.C. § 1226, "detention subject to bond or other conditions is the default rule and mandatory detention is the exception." Objections at 7. In contrast, under section 1225(b), "the default rule is mandatory detention with release on parole the exception." Objections at 7. The Government argues that this distinction is meaningful because in *Lora*, "the Second Circuit found detention under section 1226(c) problematic because it lacked a 'procedural safeguard' for aliens detained without a hearing. But aliens detained under section 1225(b)(1)(B)(ii) have a procedural safeguard: the opportunity for release on parole." Objections at 7 (quoting *Lora*, 804 F.3d at 614).

This argument is flawed. If the Second Circuit was concerned about the lack of a procedural safeguard for aliens detained without a hearing, that concern would apply more under section 1225(b) where the norm is mandatory detention than under section 1226(c) where the standard practice is to provide bond. Moreover, even assuming that the Government's argument followed logically, the opportunity to seek parole is an insufficient procedural safeguard under *Lora*. Indeed, aliens held pursuant to section 1226(c) may also seek parole if their "continued detention is not in the public interest," 8 C.F.R. § 212.5(b)(5), as the habeas petitioner in *Lora* did as an alternative justification for why he should no longer be subject to indefinite detention. *See* 804 F.3d at 608. The existence of the possibility of parole did not change the Second Circuit's decision that section 1226(c) "must be read to contain an implicit temporal limitation." *Id.* at 606.

Other courts in this circuit to consider the constitutionality of indefinite detention under section 1225(b) have also discussed the reasons why parole is an inadequate protection. First, "[t]he parole decision is not made by a neutral judicial arbiter," but rather by an executive officer

15

of the Department of Homeland Security. *Sammy* Bench Opinion at 51. The parole determination "is a discretionary decision" that is unreviewable "by an immigration judge or federal court." *Ricketts*, 2016 WL 7335675, at *4. That some aliens might receive constitutionally required review of their detention if an executive officer decides to grant it is insufficient to satisfy due process, which must be satisfied for *all* similarly situated aliens. Second, and perhaps more important, "[p]arole may only be granted for 'urgent humanitarian reasons' or 'significant public benefit.' That standard is not coextensive with the standards for release governing a bond hearing." *Sammy* Bench Opinion at 51. Many detained individuals who are not dangerous to the public or flight risks, and thus would likely be entitled to release on bond, "cannot argue that humanitarian reasons or the public benefit compel[s] [their] release" and will thus remain detained without a hearing indefinitely. *Arias*, 2016 WL 3906738, at *10; *accord Ricketts*, 2016 WL 7335675, at *4; *see also Morris*, 2017 WL 1968314, at *5 ("Discretionary parole for 'urgent humanitarian reasons' or 'significant public benefit' may be available for some immigrants, but Petitioner's parole request was denied." (citation omitted)). As a result, parole does not provide process for *all* aliens facing indefinite detention under section 1225(b), and thus it cannot provide a satisfactory alternative to individualized bond hearings pursuant to *Lora*.

The Government next argues that because section 1225(b) "applies to aliens on the threshold of initial entry to the United States," who receive fewer due process protections than aliens who are already in the United States like those detained under section 1226(c), *Lora*'s holding cannot be extended to section 1225(b). Objections at 9. However, as explained above, LPRs may be detained pursuant to section 1225(b) under certain conditions, and these individuals "possess the same rights at the border as they do inside it, in spite of their brief

16

absence from the United States." *Arias*, 2016 WL 3906738 (citing *Kwong Hai Chew v. Colding*, 344 U.S. 590 (1953), and *London v. Plasencia*, 459 U.S. 21 (1982)); *accord Morris*, 2017 WL 1968314, at *3. As a result, these individuals are entitled to due process even when arriving at the border, and therefore may not be subjected to indefinite detention. And because constitutional avoidance is a tool of statutory construction, "once the statute is construed in a particular way, that is how it applies across the board, even if in factually less sympathetic cases than those that prompted the statute's narrowed construction." *Sammy* Bench Opinion at 49-50; *see also Clark*, 543 U.S. at 378 ("To give these same words a different meaning for each category would be to invent a statute rather than interpret one."). As a result, detention pursuant to section 1225(b) without an individualized bond hearing must have an implicit six-month limit for LPRs seeking admission, and thus for *all* aliens seeking admission regardless of their status.

## IV. Conclusion

The Government's objections are denied. The Court approves the Magistrate Judge's Report and Recommendation in full. Ahmed's petition for writ of habeas corpus is granted in part, and the Government shall provide Ahmed with an individualized bond hearing no later than December 18, 2017.

SO ORDERED.

Dated: December 4, 2017
New York, New York

_____
ALISON J. NATHAN
United States District Judge